IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO.  1:07-CR-205-01 |
| | : | 1:07-CR-205-02 |
| v. | : | 1:07-CR-205-03 |
| | : | 1:07-CR-205-04 |
| **AVERY L. SOLLENBERGER,** | : | 1:07-CR-205-05 |
| **DENA SOLLENBERGER,** | : | |
| **GARY R. SOLLENBERGER,** | : | (Judge Conner) |
| **WENDELL D. SOLLENBERGER, and** | : | |
| **LUANNE L. HUNSINGER,** | : | |
| Defendants | : | |

**MEMORANDUM**

Presently before the court is the issue of whether Jonathan F. Altman, Esquire should be permitted to continue representing the five defendants in the above-captioned action. The court held a hearing on the propriety of such representation on September 7, 2007, and the issue has been fully briefed and is ripe for disposition. For the reasons that follow, the court will disqualify Attorney Altman from representing any of the five defendants.

**I.   Factual Background**

The defendants, Avery L. Sollenberger, Dena Sollenberger, Gary R. Sollenberger, Wendell D. Sollenberger, and Luanne L. Hunsinger, are charged in a single indictment with conspiracy to defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of the Internal Revenue Service ("IRS") in the computation, assessment, and collection of income taxes. (See Doc. 1.) The indictment alleges that, in 1994, the defendants became clients of Commonwealth Trust Company ("CTC"), a company that is suspected of

marketing, selling, and servicing domestic and foreign trusts and offshore bank accounts designed to defraud the IRS by concealing assets. (Id. ¶ 19.) The indictment further alleges that CTC created several domestic and foreign trusts for the defendants, which the defendants used to conceal various assets from the IRS. (Id. ¶¶ 20-32.)

On August 15, 2007, the government filed a motion for a hearing pursuant to Federal Rule of Criminal Procedure 44(c)[1] to determine the propriety of Attorney Altman's joint representation of all five defendants in the above-captioned action. (See Doc. 66.) Given Rule 44(c)'s requirement that the court "promptly inquire about the propriety of joint representation," the court scheduled a hearing on the government's motion for September 7, 2007. (See Docs. 74, 76.)

On the day prior to the hearing, the government filed a supplemental brief, which revealed that Attorney Altman currently represents two CTC associates, namely Constance Taylor ("Taylor") and C. Robert Dadds ("Dadds"), in a related criminal case pending in the United States District Court for the Eastern District of Pennsylvania. See United States v. Crim, No. 2:06-CR-0658 (E.D. Pa.). The

---

[1] Federal Rule of Criminal Procedure 44(c) provides, in pertinent part, as follows:

> The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

Id.

superseding indictment in that case alleges that Taylor, acting on behalf of CTC, provided clients with "false trust documents" and advice about how to "maintain and manage" such documents for purposes of asset concealment. Id. at Doc. 201 ¶ 7. The indictment further alleges that Taylor and Dadds conducted sales seminars and solicited clients for CTC by "falsely representing that taxpayers could lawfully avoid paying income taxes by placing their income and assets into CTC's trust packages." Id. at Doc. 201 ¶ 42.

During the Rule 44(c) hearing, Attorney Altman confirmed that he currently represents Taylor and Dadds in the Eastern District proceeding. (Doc. 100 at 2.) Attorney Altman also revealed that Taylor provides paralegal services to his law offices as an independent contractor. (Id. at 3.) When asked to explain Taylor and Dadds' relationship to CTC, Attorney Altman stated that Taylor drafted trust documents at the request of a CTC attorney and that Dadds sold CTC products. (Id. at 3-4.) Attorney Altman admitted that Taylor could have drafted the very documents purchased by the defendants. (Id. at 12.) The government alleges that Taylor not only drafted the defendants' documents, but also provided them with advice regarding how to use those documents for the concealment of assets. (Id. at 6.) In support of this position, the government has provided a series of letters between Taylor and defendant Avery Sollenberger ("Avery"). (See Doc. 106-2.) In these letters, Avery asks Taylor for advice regarding the management of several allegedly fraudulent trusts created by CTC, including Bitterroot Rental Company, Associated Dynamics LLC, Design Concepts, Contract Building Company,

Alanmore Enterprises, and Teltec Enterprises.  (See id. at 2, 4-5, 7, 11-13; see also Doc. 1 ¶¶ 1, 27, 29 (alleging that the aforementioned entities are sham trusts created by CTC and operated by the defendants)).  In each letter, Avery provides Taylor with detailed information regarding an anticipated financial transaction and solicits specific advice from her.  (See Doc. 106-2 at 2, 4-5, at 7, 11-13.)

As further evidence of the relationship between Taylor and the defendants, the government suggests that the defendants have been asked to cooperate in Taylor's prosecution.  In a letter between Taylor and a government informant, Taylor states that IRS agents searched the defendants' properties "for the purpose of determining whether any of the Sollenbergers would be witnesses for the State against me" and "repeatedly asked each of them of their willingness to be witnesses."  (Id. at 17.)  During a return of property hearing pursuant to Federal Rule of Criminal Procedure 41(g), Avery and Wendell confirmed that they had been asked to testify against Taylor.  Avery stated that "the reason why our place was given a search warrant was [the agents] wanted to find somebody to testify against Connie Taylor, because they had some accusations against her."  (Id. at 21.)  Similarly, Wendell testified, "[O]ne of the agents asked me if I knew Connie Taylor and I said yes, and they wanted to know if I would be willing to testify against her in a court of law."  (Id. at 25.)

In spite of the government's evidence, Attorney Altman insists that his representation of Taylor and Dadds neither has created nor is likely to create a conflict of interest.  In support of his position, Attorney Altman explains that all

4

seven of his clients, both in this action and in the Eastern District, intend to assert compatible defenses at trial, namely, that they are innocent of any criminal misconduct and that their actions were undertaken in good faith reliance upon CTC attorneys. (Doc. 100 at 25.) Moreover, Attorney Altman insists that the defendants have been advised of the pitfalls of joint representation but have indicated their preference to proceed with the representation. (See Doc. 104-2 at 1-3.)

**II.    Discussion**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. An element of this Sixth Amendment guarantee is the right to counsel of one's choice. United States v. Voigt, 89 F.3d 1050, 1074 (3d Cir. 1996) (citing Powell v. Alabama, 287 U.S. 45, 53 (1932). However, the right to choose one's counsel is not absolute. See Wheat v. United States, 486 U.S. 153, 164 (1998). "[W]here considerations of judicial administration supervene, the presumption in favor of counsel of choice is rebutted and the right must give way." United States v. Tinsley, 172 F. App'x 431, 435 (3d Cir. 2006).

One such consideration of judicial administration is the potential for a conflict of interest. Wheat, 486 U.S. at 164. A conflict of interest may arise where a defendant's chosen counsel has "divided loyalties due to concurrent or prior representation of another client who is a co-defendant, a co-conspirator, or a government witness." United States v. Stewart, 185 F.3d 112, 121 (3d Cir. 1999). A

5

district court has discretion to disqualify counsel where there "a demonstration of actual conflict" or "a showing of a serious potential for conflict." Wheat, 486 U.S. at 164. However, a district court should not interfere with a party's choice of counsel where the potential for conflict is "very highly speculative." United States v. Flanagan, 679 F.2d 1072, 1076 (3d Cir. 1982).

In the court's view, Attorney Altman's representation of the defendants is fraught with actual and potential conflicts of interest. Attorney Altman currently represents the alleged creators and sellers of fraudulent trust products in the Eastern District and the purchasers and users of those products in the instant case. As a result, Attorney Altman's continued representation of the defendants in the instant case would strip them of a potentially compelling defense, namely, that they believed in good faith that their actions were legal because of the advice and counsel given to them by Taylor and other CTC associates. While Attorney Altman argues that the defendants do not intend to pursue the aforementioned defense at trial, this argument is unavailing because the defendants' trial strategy is far from fixed at this early stage of the proceedings  See Stewart, 185 F.3d at 121-22 (concluding that a district court may not accept an attorney's assurances that he or she will "not pursue an alternate strategy at trial" because "notwithstanding an attorney's pretrial assurances otherwise, a defendant's trial strategy is not fixed"). This uncertainty regarding trial strategy is heightened by the complexity of the instant case, which involves the creation and maintenance of numerous trust entities and the flow of assets between these entities. See also United States v.

Lebed, No. 05-362, 2005 WL 1971877, at *7 (E.D. Pa. Aug. 12, 2005) ("Joint representation threatens to create conflict particularly in complex trials, notwithstanding attorney assurances about trial strategy or planned defenses, because the course of the proceeding is not predictable."). If the court permitted Attorney Altman to continue to represent the defendants, he would likely find himself in the untenable position of selecting a trial strategy that could potentially harm his ability to defend Taylor and Dadds in the Eastern District.

As a further complication, Taylor could be called upon to testify on behalf of the government at the defendants' trial. This situation would require Attorney Altman to cross examine a client, a situation that is teeming with issues of divided loyalties. See United States v. Muscony, 927 F.2d 742, 750 (3d Cir. 1991) (stating that an attorney who cross examines former clients "inherently encounters divided loyalties"). Moreover, as the government's evidence suggests, it is highly likely that the defendants will be asked to testify against Taylor in exchange for a plea. If such a circumstance evolves, Attorney Altman will be placed in an impossible position, wherein any advice he provides would harm one or more of his clients. Finally, the case presents an unusual situation, wherein Taylor is not only Attorney Altman's client but also a provider of paralegal services to his law firm. In this capacity, Taylor may have access to privileged communications between Attorney Altman and the defendants in the instant case, some of which she may be able to use for her benefit in her own criminal case. The court finds that this situation is so ripe for exploitation that Attorney Altman's disqualification is necessary to guard against it.

For the foregoing reasons, the court finds that the interests of justice outweigh the defendants' Sixth Amendment rights to their chosen counsel. Accordingly, the court will disqualify Jonathan F. Altman, Esquire from representing any of the five defendants in the above-captioned action. An appropriate order shall issue.

        S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:     October 17, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.  1:07-CR-205-01** |
| | : | 1:07-CR-205-02 |
| v. | : | 1:07-CR-205-03 |
| | : | 1:07-CR-205-04 |
| **AVERY L. SOLLENBERGER,** | : | 1:07-CR-205-05 |
| **DENA SOLLENBERGER,** | : | |
| **GARY R. SOLLENBERGER,** | : | **(Judge Conner)** |
| **WENDELL D. SOLLENBERGER,** and | : | |
| **LUANNE L. HUNSINGER,** | : | |
| Defendants | : | |

# O R D E R

AND NOW, this 17th day of October, 2007, upon consideration of the joint representation hearing held on September 7, 2007, and for the reasons set forth in the accompanying memorandum, it is hereby ordered that:

1. Jonathan F. Altman, Esquire is DISQUALIFIED from representing any of the defendants in the above-captioned action.

2. Jonathan F. Altman, Esquire shall provide a copy of the instant memorandum and order to the defendants in the above-captioned action.

3. The defendants are directed to obtain qualified counsel and notify the court of the identity of such counsel on or before November 16, 2007.

4. Once the parties have retained counsel, the court will issue a revised pretrial schedule.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge